**FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-22-0000506**
**18-AUG-2025**
**12:41 PM**
**Dkt. 82 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---oOo---


HAWAIʻI GOVERNMENT EMPLOYEES ASSOCIATION, AFSCME,
LOCAL 152, ALF-CIO; and UNITED PUBLIC WORKERS,
AFSCME, LOCAL 646, AFL-CIO, Plaintiffs-Appellants, v.
DEPARTMENT OF PUBLIC SAFETY, STATE OF HAWAIʻI,
Defendant-Appellee,
and
JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10;
DOE CORPORATIONS 1-10; DOE GOVERNMENTAL ENTITIES 1-10,
and DOE ENTITIES 1-10, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1CCV-21-0001304)


NO. CAAP-22-0000506


AUGUST 18, 2025


LEONARD, PRESIDING JUDGE, AND WADSWORTH AND McCULLEN, JJ.


OPINION OF THE COURT BY WADSWORTH, J.

This appeal challenges the dismissal of claims brought against Defendant-Appellant Department of Public Safety, State of Hawaiʻi (**PSD**) for the alleged wrongful disclosure of certain employees' COVID-19 vaccination status.  Plaintiffs-Appellants Hawaiʻi Government Employees Association, AFSCME, Local 152, AFL-CIO (**HGEA**) and United Public Workers, AFSCME, Local 646, AFL-CIO (**UPW**) (together, **Plaintiffs**) appeal from:  (1) the March 31, 2022 "Order Granting [PSD's] Amended Motion to Dismiss, Filed on

November 29, 2021" (**Dismissal Order**), and (2) the August 2, 2022 Final Judgment (**Judgment**), both entered by the Circuit Court of the First Circuit (**Circuit Court**).[1]  Through the Dismissal Order and the Judgment, the Circuit Court dismissed Plaintiffs' claims against PSD for invasion of privacy, negligent supervision, and negligence, based on the conclusion that Plaintiffs lacked associational standing to sue on behalf of their members.

Plaintiffs raise four points of error on appeal.  In their first two points of error, Plaintiffs contend that the Circuit Court erred in dismissing their invasion of privacy claim, which was premised on Hawaii's Uniform Information Practices Act (**UIPA**), Hawaii Revised Statutes (**HRS**) Chapter 92F. Specifically, Plaintiffs argue that the Circuit Court misinterpreted UIPA and misapplied the Hawaiʻi Supreme Court's decision in State of Hawaiʻi Org. of Police Officers v. City & Cnty. of Honolulu (SHOPO v. City), 149 Hawaiʻi 492, 494 P.3d 1225 (2021), in ruling that Plaintiffs' members did not have a private cause of action under UIPA to sue for the alleged wrongful disclosure.  In their third and fourth points of error, Plaintiffs contend that the Circuit Court erred in:  (a) dismissing their claims for negligent supervision and negligence; and (b) ruling that Plaintiffs lacked associational standing to sue on behalf of their members.[2]

We hold that the Circuit Court erred in concluding that Plaintiffs lacked associational standing.  Although the court correctly ruled that Plaintiffs' members could not sue PSD under UIPA for the alleged disclosure of their vaccination status, Plaintiffs' complaint, viewed in the light most favorable to them, stated a tort claim for invasion of privacy based on the Restatement (Second) of Torts (**Restatement**) § 652D (1977). Because that claim could have been brought by their respective individual members, Plaintiffs met the first requirement for associational standing, and the Circuit Court's contrary conclusion was wrong.  Plaintiffs also met the remaining

---

[1]    The Honorable Lisa W. Cataldo presided.

[2]    We have restated Plaintiffs' points of error for clarity.

requirements for associational standing. Each Plaintiff sought to protect interests – *i.e.*, the working conditions of its members – which were germane to the organization's purpose. Each Plaintiff sought relief – *i.e.*, declaratory relief and damages sustained by the Plaintiff organization – which did not require participation by its individual members.

We further hold that the Circuit Court did not err in dismissing Plaintiffs' claims for negligent supervision and negligence. Plaintiffs' allegations were insufficient to state a claim for negligent supervision, and Plaintiffs chose not to amend their complaint. Plaintiffs also failed to show that UIPA or the Governor's Emergency Proclamation Related to the Covid-19 Response (**Emergency Proclamation** or **Proclamation**) established a legal duty supporting a negligence claim in these circumstances.

Accordingly, we affirm in part and vacate in part the Dismissal Order and the Judgment.

## I.   Background[3/]

On August 5, 2021, then-Governor David Ige issued the Emergency Proclamation. It required, among other things, that state and county employees attest to their respective department or agency whether they were "(1) fully vaccinated for COVID-19; (2) partially vaccinated for COVID-19 (including receipt of one dose of a two-dose course of vaccination); or (3) not vaccinated for COVID-19."

On August 19, 2021, Shelly Harrington (**Harrington**), a PSD employee, sent an email to approximately 260 PSD employees at their work addresses with the subject line "YOU ARE HEREBY NOTIFIED THAT YOU ARE REQUIRED TO SUBMIT A NEGATIVE COVID-19 TEST BY EVERY MONDAY (PRIOR TO YOUR WORK TIME)." The email address of all employees to whom the email was sent was visible to each recipient of the email as a "cc." Plaintiffs allege that the

---

[3/]    Because we are reviewing the Circuit Court's order on a motion to dismiss, we take the factual allegations in Plaintiffs' complaint as true. See Civil Beat Law Ctr. for the Public Int., Inc. v. City & Cnty. of Honolulu, 144 Hawai‘i 466, 484, 445 P.3d 47, 65 (2019). This factual background is therefore taken primarily from the allegations in, and the documents referenced in and attached to, Plaintiffs' complaint.

email was sent to both vaccinated and unvaccinated employees, and that it "disclosed the identity and vaccination status of 260 employees in the PSD department . . . ."  In response to a letter complaining about the disclosure, the PSD's Director stated that the COVID testing requirement, which was the subject of the email, "is for both vaccinated and unvaccinated employees (i.e. vaccinated but failed to submit vaccination card, vaccinated but filed to submit vaccination attestation form, unvaccinated but failed to submit exemption, and unvaccinated)."[4]

On October 25, 2021, Plaintiffs filed a complaint against PSD.  They alleged that approximately 118 of Harrington's email recipients were HGEA members, and approximately 87 were UPW members.  The complaint asserted claims for (1) invasion of privacy, citing HRS § 92F-14 (Count I), (2) negligent supervision (Count II), and (3) negligence (Count III).

As to Count I, Plaintiffs alleged that PSD "by and through its employees violated the 'significant privacy interest' of the members of the Plaintiff organizations and/or associations by publishing the vaccination status of 260 PSD employees . . . ."  Plaintiffs further alleged that pursuant to HRS § 92F-14, their members had a "significant privacy interest" in the contents of the vaccination status attestation they submitted to PSD, and the disclosure of their members vaccination status violated that statute.[5]

---

[4]    In opposing PSD's motion to dismiss, Plaintiffs claimed that "[a] cursory reading of the Director's memo and Ms. Harrington's mass email, shows that Ms. Harrington sent the email to employees she believed, based on her role as DHRO, were unvaccinated employees."

[5]    HRS § 92F-14 (2012) provides, in pertinent part:

> **Significant privacy interest; examples**. (a) Disclosure of a government record shall not constitute a clearly unwarranted invasion of personal privacy if the public interest in disclosure outweighs the privacy interest of the individual.
>
> (b)  The following are examples of information in which the individual has a significant privacy interest:
>
> (1)    Information relating to medical, psychiatric, or psychological history, diagnosis, condition, treatment, or evaluation, other than directory information while an individual is present at
>
> (continued...)

As to Count II, Plaintiffs alleged that "Defendant PSD had a legal duty to supervise its employees in relation to the publication and distribution of any information that employees had a 'significant privacy interest' in . . . ." Plaintiffs stated that PSD "by and through its employee Harrington," breached the privacy interests described in HRS § 92F-14 and the Emergency Proclamation, and thereby "negligently failed in its legal duty to supervise its employee Harrington." (Capitalization altered.)

Plaintiffs' Count III asserted a negligence claim, based on alleged duties of confidentiality and non-disclosure created by HRS § 92F-14 and the Governor's Emergency Proclamation.

On November 29, 2021, PSD filed an amended motion to dismiss the complaint. PSD argued that as a threshold issue, the Circuit Court needed to determine whether Plaintiffs had standing, and under the three-factor test for associational standing[6] described in Hawaii Medical Ass'n v. Hawaii Medical Serv. Ass'n, Inc., 113 Hawaiʻi 77, 95, 148 P.3d 1179, 1197 (2006), could not establish standing. PSD argued that Plaintiff's complaint conceded that "the claims asserted and the relief requested requires the participation of individual members in the present claim[,]" whereas the test for associational standing under Hawaii Medical Ass'n requires that "**neither** the claims asserted **nor** the relief requested requires the participation of individual members . . . ." PSD also contended

_____

[5] (...continued)
    such facility;

    . . . .

    (4) Information in an agency's personnel file, or applications, nominations, recommendations, or proposals for public employment or appointment to a governmental position[.]

[6] Although some courts use the terms interchangeably, "associational standing" generally refers to an organization or association's standing to sue on behalf of its members, Hunt v. Washington State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977), while "organizational standing" refers to an association/organization's standing to sue for injuries to itself or its own activities. See People for the Ethical Treatment of Animals v. U.S. Dept. of Agric., 797 F.3d 1087, 1093 (D.D.C. 2015).

that pursuant to Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 12(b)(6), Plaintiffs' complaint failed to adequately plead claims for violation of UIPA, negligent supervision, and negligence.

At the hearing on PSD's motion to dismiss, the Circuit Court questioned Plaintiffs' counsel about the complaint's statement that "the claims asserted and the relief requested requires the participation of individual members in the present claim." Plaintiffs' counsel said it was a "typographical error."

On March 31, 2022, the Circuit Court entered the Dismissal Order, granting PSD's motion to dismiss. The order construed the motion to dismiss as "raising issues about this Court's subject matter jurisdiction — and more specifically, whether Plaintiffs have organizational standing . . . ." The court reasoned that "while [UIPA] section 14(b) sets forth examples of information in which and individual has a significant privacy interest, the Supreme Court [in SHOPO v. City] has determined that nothing in that section of HRS Section 92F-13 *prohibits* the disclosure of such information." Because Plaintiffs' members could not sue under UIPA for the alleged wrongful disclosure, and because associational standing requires that "members would otherwise have standing to sue in their own right," the Circuit Court determined that Plaintiffs lacked standing. The Dismissal Order dismissed Plaintiffs' complaint in its entirety, with leave to amend within thirty days, and did not specifically address the viability of Plaintiffs' claims for negligent supervision and negligence.

Plaintiffs did not file an amended complaint, and the Judgment was entered on August 2, 2022.

## II. Discussion

### A. Plaintiffs Have Associational Standing

We first address Plaintiffs' fourth point of error, which challenges the Circuit Court's ruling that they lacked associational standing.[7]

---

[7] The Circuit Court's order stated it was deciding the motion to dismiss "on the issue of organizational standing . . . ." For purposes of

(continued...)

"In Hawaiʻi state courts, standing is a prudential consideration regarding the proper — and properly limited — role of courts in a democratic society and is not an issue of subject matter jurisdiction . . . ." Tax Foundation of Haw. v. State, 144 Hawaiʻi 175, 188, 439 P.3d 127, 140 (2019) (internal quotation marks omitted). The Circuit Court thus erred in stating that PSD's motion to dismiss "raises issues about this Court's subject matter jurisdiction[.]"

An association may sue on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. Hawaii Medical Ass'n, 113 Hawaiʻi at 95, 148 P.3d at 1197.

As to the first requirement for associational standing, we conclude below in section C that Plaintiffs' complaint stated a tort claim for invasion of privacy under the Restatement § 652D – a claim that could have been brought by their respective individual members. Plaintiffs thus met the first standing requirement, and the Circuit Court's contrary conclusion was wrong.

Each Plaintiff also met the second requirement for associational standing – that "the interests it seeks to protect are germane to the organization's purpose[.]" Id. at 95, 148 P.3d at 1197. As the collective bargaining representative of many PSD employees, each Plaintiff is responsible for oversight of its members' terms and conditions of employment, and for bargaining with PSD regarding the same. HRS § 377-5(a) (2015). Courts routinely hold that unions have associational standing to sue over matters affecting the working conditions of their members, or even over matters outside of working conditions. See, e.g., Intern. Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. Brock, 477 U.S. 274, 286-87 (1986)

---

7/ (...continued) clarity, we refer to an organization's standing to sue on behalf of its members as "associational standing." See supra note 6.

(holding that union had standing to bring a suit challenging the Secretary of Labor's interpretation of eligibility provisions of the Trade Act of 1974); <u>Calif. Rural Legal Assistance, Inc. v. Legal Servs. Corp.</u>, 917 F.2d 1171, 1174-75 (9th Cir. 1990) (holding that unions had standing to challenge a ban on providing legal services funding to permanent resident aliens, because its members included permanent resident aliens).

The third requirement for associational standing is that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." <u>Hawaii Medical Ass'n</u>, 113 Hawaiʻi at 95, 148 P.3d at 1197. Here, the complaint alleged that "the claims asserted and the relief requested <u>requires</u> the participation of individual members in the present claim[,]" which would appear to fail the third requirement. At the hearing on the motion to dismiss, however, Plaintiffs' counsel clarified that this was a typographical error, and he had meant to say "does not require" the participation of individual members. Under the circumstances, we do not consider this error fatal to Plaintiffs' standing argument. <u>See</u> HRCP Rule 8(f) ("All pleadings shall be so construed as to do substantial justice."); <u>Hall v. Kim</u>, 53 Haw. 215, 221, 491 P.2d 541, 545 (1971) ("[W]e have rejected 'the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome' and in turn accepted 'the principle that the purpose of pleading is to facilitate a proper decision on the merits.'" (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 48 (1957))).

Nevertheless, if Plaintiffs were to seek tort damages for their individual members, Plaintiffs would lack standing, as claims for money damages require the participation of individual members. <u>Hawaiʻi Med. Ass'n</u>, 113 Hawaiʻ at 96, 148 P.3d at 1198. At the hearing on the motion to dismiss, Plaintiffs clarified that they were <u>not</u> seeking damages for their individual members, and were only seeking damages allegedly sustained by the two Plaintiff organizations. On appeal, Plaintiffs state that "[t]he present action was brought as a Declaratory Judgment action requesting the Court to find as a matter of law that [PSD's]

actions were unlawful and prevent it from happening again . . . [and t]he Prayer for Relief, seeks, in part, damages for the [Plaintiffs] as organizations[.]"  "Generally, 'requests by an association for declaratory and injunctive relief do not require participation by individual association members.'"  Id. at 96-97, 148 P.3d at 1198-99 (quoting Hosp. Council of W. Pa. v. City of Pittsburgh, 949 F.2d 83, 89 (3d Cir. 1991)).

Accordingly, Plaintiffs sufficiently alleged the requirements for associational standing to withstand PSD's motion to dismiss.  The Circuit Court erred in ruling otherwise.

B.    UIPA Does Not Provide an Express or Implied Private Cause of Action for Disclosure of Private Information

In their first point of error, Plaintiffs contend that "the Circuit Court misinterpreted the scope of [HRS §] 92F-14 . . . and [HRS] Chapter 92F," by ruling that UIPA did not provide a private cause of action for disclosures of information protected by HRS § 92F-14(b).  Relatedly, in their second point of error, Plaintiffs contend that "the Circuit Court [improperly] expanded the application of the Hawaii State Supreme Court's decision in [SHOPO v. City]," because that case found there was no private right of action under UIPA for SHOPO to prevent the release of records, whereas Plaintiffs are seeking a remedy for unlawful release of personal records.

"The UIPA effectuates the State's policy of conducting government business as openly as possible tempered by a recognition of the right of the people to privacy."  Mott v. City & Cnty. of Honolulu, 146 Hawaiʻi 210, 213, 458 P.3d 921, 924 (App. 2020) (internal quotation marks, ellipsis, and brackets omitted) (quoting HRS §92F-2 (2012)).  "Accordingly, UIPA mandates disclosure of public records but furnishes an exception for 'government records which, if disclosed, would constitute a clearly unwarranted invasion of personal privacy.'  HRS § 92F-13(1) (2012)."  SHOPO v. City, 149 Hawaiʻi at 497, 494 P.3d 1230 (brackets omitted).

In SHOPO v. City, the supreme court expressly held that "there is no private cause of action to prevent, as opposed to

9

compel, the release of public records under UIPA." Id. There, SHOPO sued under UIPA to prevent the Honolulu Police Department's disclosure of certain police disciplinary records. The supreme court ultimately had to decide whether SHOPO had a right to bring the suit under UIPA. The court first determined that "no express cause of action to prevent disclosure of government records exists under UIPA"; rather, under HRS § 92F-15(a), "UIPA provides an express cause of action for [only] a specific class of people: those aggrieved by nondisclosure" of government records.[8/] Id. at 506, 494 P.3d at 1239.

The supreme court also analyzed whether an implied private right of action to prevent disclosure exists under HRS Chapter 92F, applying the factors set forth in Cort v. Ash, 422 U.S. 66, 78 (1975). Id. Under Cort and its progeny, legislative intent "is given the greatest weight" in determining whether a statute implies a private right of action. Id. at 507, 494 P.3d at 1240. The court thus analyzed the legislative scheme and the plain language of UIPA, noting that "[t]he statutory language here is not prohibitive; that is, HRS § 92F-13 does 'not require disclosure' if an exemption applies, but it does not forbid it, either."[9/] Id. After applying the Cort factors, the court concluded:

> Not only does UIPA already provide an express cause of action for particular groups, nondisclosure is only mandatory under UIPA where another law - for instance, a state or federal statute, the constitution, or a court order - independently requires an agency to withhold the sought records. There is no right of nondisclosure under UIPA, only agency discretion to utilize the enumerated exceptions.

---

[8/]     HRS § 92F-15(a) (2012) provides that "[a] person aggrieved by a denial of access to a government record may bring an action against the agency at any time within two years after the agency denial to compel disclosure."

[9/]     The court also invoked the "frequently stated principle of statutory construction . . . that when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies." SHOPO v. City, 149 Hawaiʻi at 507, 494 P.3d 1240 (quoting Reliable Collection Agency, Ltd. v. Cole, 59 Haw. 503, 510, 584 P.2d 107, 111 (1978)). The court observed that UIPA already expressly provides for particular kinds of enforcement actions, including misdemeanor criminal penalties for agency officers or employees who "intentionally disclose or provide a copy of a government record, or any confidential information explicitly described by specific confidentiality statutes, to any person or agency with actual knowledge that disclosure is prohibited." Id. (brackets omitted) (quoting HRS § 92F-17 (2012)).

Id. at 509, 494 P.3d at 1242 (emphases added).

Here, Plaintiffs' invasion of privacy claim is premised in the first instance on an asserted right of nondisclosure under UIPA, which purportedly gives rise to a private right of action under UIPA for the alleged wrongful disclosure of private information. The supreme court made clear in SHOPO v. City that UIPA does not provide such a right. Accordingly, the Circuit Court did not err in ruling that Plaintiffs' members could not bring individual suits under UIPA for PSD's alleged disclosure of their vaccination status.

C. **The Allegations of the Complaint State a Claim for Invasion of Privacy under the Restatement (Second) of Torts § 652D**

Although Plaintiffs' invasion of privacy claim founded on UIPA lacks merit, we must, in reviewing the grant of a motion to dismiss for failure to state a claim, "view a plaintiff's complaint in a light most favorable to them in order to determine whether the allegations contained therein could warrant relief under any alternative theory." Malabe v. Ass'n of Apartment Owners of Exec. Ctr. by & through Bd. of Dirs., 147 Hawaiʻi 330, 338, 465 P.3d 777, 785 (2020) (brackets omitted and emphasis added).

Plaintiffs' complaint described their invasion of privacy claim not only as premised on UIPA, but also as an "unlawful invasion of the privacy interests" of Plaintiffs' members. Plaintiffs also invoked the constitutional right of privacy during the hearing on PSD's motion to dismiss.

Article I, section 6 of the Hawaiʻi Constitution provides: "The right of the people to privacy is recognized and shall not be infringed without the showing of a compelling state interest. The legislature shall take affirmative steps to implement this right." In State of Hawaiʻi Org. of Police Officers v. Soc'y of Pro. Journalists (SHOPO v. SPJ), 83 Hawaiʻi 378, 927 P.2d 386 (1996), the supreme court recognized that Article I, section 6 "relates to privacy in the informational and personal autonomy sense." Id. at 397, 927 P.2d at 405 (quoting Stand. Comm. Rep. No. 69, in Proceedings of the Constitutional

Convention of Hawaiʻi of 1978, Vol. I, at 674). "[T]he privacy right protected by the 'informational privacy' prong of article I, section 6 is the right to keep confidential information which is 'highly personal and intimate.'" Id. at 398, 927 P.2d at 406. "Because health information is 'highly personal and intimate,' it is protected by the informational prong of article I, section 6." Cohan v. Ayabe, 132 Hawaiʻi 408, 416, 322 P.3d 948, 956 (2014) (quoting Brende v. Hara, 113 Hawaiʻi 424, 430, 153 P.3d 1109, 1115 (2007) (per curiam)).

In SHOPO v. SPJ, the supreme court also recognized the framers' view of the constitutional right to privacy – that it "encompasses the common law right of privacy or tort privacy." 83 Hawaiʻi at 398, 927 P.2d at 406 (quoting Stand. Comm. Rep. No. 69, in Proceedings of the Constitutional Convention of Hawaiʻi 1978, at 674). The court thus considered it "appropriate, when determining whether disclosure of information implicates the constitutional right to privacy, to consider whether the disclosure would result in tort liability for invasion of privacy[,]" as set forth in Restatement §§ 652D, 383 (1977). Id. The court summarized these principles more recently in Pac. Radiation Oncology, LLC v. Queen's Med. Ctr., 138 Hawaiʻi 14, 375 P.3d 1252 (2016), stating:

> [W]e have previously noted that the framers "equated privacy in the informational sense" with the "common law right of privacy," so that "[o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his [or her] privacy, if the matter publicized is of a kind that (a) would be regarded as highly offensive to a reasonable person, and (b) is not of legitimate concern to the public."

Id. at 19, 375 P.3d at 1257 (quoting SHOPO v. SPJ, 83 Hawaiʻi at 398, 927 P.2d at 406); see Restatement § 652D.

Here, the factual allegations of the Complaint, which we must assume are true, appear to state a claim for invasion of privacy under the Restatement § 652D. Plaintiffs alleged that Harrington's email disclosed the identity and vaccination status of 260 employees in PSD. Although disclosure "to a single person or even to a small group" may not constitute "publicity," a "statement made in an address to a large audience" is sufficient

to satisfy the "publicity" requirement.  Restatement § 652D cmt. a.  Plaintiffs also alleged that the PSD employees' vaccination status was "private, confidential, medical health information and/or medical status."  See Cohan, 132 Hawaiʻi at 416, 322 P.3d at 956; Brende, 113 Hawaiʻi at 430, 153 P.3d at 1115.

Whether a disclosure would be "highly offensive to a reasonable person" is ordinarily a question of fact to be determined by a jury.  See, e.g., Canas v. Bay Entertainment, LLC., 498 P.3d 1082, 1087 (Ariz. Ct. App. 2021) (holding that trial court erred in dismissing a false light privacy claim, where the offensiveness of defendants' disclosure was a question for the finder of fact); Shulman v. Group W Productions, Inc., 955 P.2d 469, 494 (Cal. 1998) (holding that jury could find media defendants' conduct to be a "highly offensive" intrusion upon seclusion).  Similarly, in the alleged circumstances, where reasonable minds could differ on whether the PSD employees' vaccination status was or was not of legitimate public concern, the issue would ordinarily be one for the finder of fact.  See, e.g., Judge v. Saltz Plastic Surgery, P.C., 367 P.3d 1006, 1013 (Utah. 2016) (holding that where reasonable minds could differ on whether a matter is of legitimate public concern, the issue is a jury question); Winstead v. Sweeney, 517 N.W.2d 874, 878 (Mich. Ct. App. 1994) (holding that if a "court concludes that reasonable minds could differ concerning the newsworthiness of the information, then the issue should be submitted to the jury").

Viewing the allegations of the Complaint in the light most favorable to Plaintiffs, we cannot say that it appears beyond doubt that Plaintiffs can prove no set of facts in support of their invasion of privacy claim that would entitle them to relief.  Accordingly, we conclude that the Circuit Court erred in dismissing Count I of the Complaint.

D.   **The Circuit Court Did Not Err in Dismissing Plaintiffs' Claims for Negligent Supervision and Negligence**

Plaintiffs contend that the Circuit Court erred in dismissing their claims for negligent supervision and negligence.

We address each claim, in turn, below.

### 1.    Negligent Supervision

The Hawaiʻi Supreme Court analyzes negligent supervision claims under the standards set forth in the Restatement § 317.[10] See Dairy Rd. Partners v. Island Ins. Co., 92 Hawaiʻi 398, 426–27, 992 P.2d 93, 121–22 (2000).  Accordingly, "negligent supervision may only be found where an employee is acting outside the scope of his or her employment[.]"  Id. at 427, 992 P.2d at 122; see Pulawa v. GTE Hawaiian Tel, 112 Hawaiʻi 3, 18, 143 P.3d 1205, 1220 (2006) (same).

Here, Plaintiffs allege that PSD "by and through its employee, Harrington, breached the statutory 'significant privacy interest'" of Plaintiffs' members, and PSD "by and through its employee, Harrington, breached the August 5, 2021, Emergency Proclamation . . . ."  (Capitalization altered.)  Plaintiffs do not allege that Harrington acted outside the scope of her employment.  Plaintiffs therefore failed to state a claim for negligent supervision under the Restatement § 317.  See Pulawa, 112 Hawaiʻi at 18, 143 P.3d at 1220.

---

[10]    The Restatement (Second) of Torts § 317 (1965) states, in relevant part:

> A master is under a duty to exercise reasonable care so to control his servant *while acting outside the scope of his employment* as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
>
> (a)    the servant
>
> > (i)    is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
> >
> > (ii)   is using a chattel of the master, and
>
> (b)    the master
>
> > (i) knows or has reason to know that he has the ability to control his servant, and
> >
> > (ii) knows or should know of the necessity and opportunity for exercising such control.

(Emphasis added.)

Plaintiffs argue that the supreme court's decision in Doe Parents No. 1 v. State, Dept. of Educ., 100 Hawaiʻi 34, 67, 58 P.3d 545, 578 (2002), supports their negligent supervision claim. There, a teacher was reinstated to his position after being acquitted of child molestation. The teacher later molested other children, and the parents of the molested children sued the Hawaiʻi Department of Education (**DOE**) for negligence. The supreme court held in part that the DOE breached the duty of care that it owed to the children and their parents in "failing to supervise or restrict [the teacher's] conduct once he had resumed exhibiting the behaviors that led to the prior accusation[.]" Id. at 41, 58 P.3d at 552. In reaching this conclusion, the court stated that "if the State knew, or reasonably should have anticipated, that one of its employees would commit an intentional tort against a person to whom the State owed a duty of care, the State is liable for the negligence of those employees who were in a position to take reasonable precautions against the anticipated harm." Id. at 68, 58 P.3d at 579 (emphasis added).

Here, Plaintiffs did not allege that Harrington committed an intentional tort, or that PSD knew, or reasonably should have anticipated, that Harrington would commit an intentional tort. Rather, the Complaint asserts that the release of PSD employees' vaccination status was admitted to be "unauthorized and a mistake," and that "[t]he negligent act of [PSD]'s Human Resources Officer, Ms. Harrington, and the adoption of her negligent act by [PSD]'s director, was 'malfeasance' . . . ." Doe Parents No. 1 does not support Plaintiffs' negligent supervision claim.

On this record, the Circuit Court did not err in dismissing Plaintiffs' claim for negligent supervision.

### 2. Negligence

A negligence claim depends on the existence of "[a] duty, or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks[.]" Knodle v.

15

Waikiki Gateway Hotel, Inc., 69 Haw. 376, 384-85, 742 P.2d 377, 383 (1987) (original brackets omitted) (quoting W.P. Keeton, Prosser and Keeton on the Law of Torts § 30, at 164–65 (5th ed. 1984)).  Here, Plaintiffs argue that "[b]oth Chapter 92F, HRS and the E[mergency] Proclamation expressly recognize a legal duty to maintain and not release employees' confidential personal information."  Whether such a duty exists is a question of law, which is reviewed *de novo*.  See Ruf v. Honolulu Police Dep't, 89 Hawaiʻi 315, 320, 972 P.2d 1081, 1086 (1999) (citations omitted).

Because UIPA does not create an express or implied cause of action for the disclosure of private information in these circumstances (see supra), it would be incongruous to conclude that UIPA nevertheless establishes a legal duty supporting a negligence claim.  Nor does the Emergency Proclamation impose such a duty.  True, the Proclamation stated that agencies were to ensure that "documentation related to vaccination status or test results obtained .  .  . are not disclosed to individuals other than as necessary to ensure compliance with this Proclamation or as required by law or court order."  But the Proclamation also contained an express disclaimer preventing suits based upon its provisions, stating that "[n]o provision of this Proclamation, or any rule or regulation hereunder, shall be construed as authorizing any private right of action to enforce any requirement of this Proclamation, or of any rule or regulation."  When read as a whole, the Proclamation does not create a legal duty supporting a negligence claim against PSD for the disclosure at issue.

Plaintiffs offer no other source for the legal duty they seek to impose.  On this record, the Circuit Court did not err in dismissing Plaintiffs' claim for negligence – to the extent it sought to impose a duty beyond that imposed by the Restatement §652D.  See supra.

### III.  Conclusion

For the reasons discussed above, we affirm in part and vacate in part.  The March 31, 2022 "Order Granting Defendant Department of Public Safety, State of Hawaii's Amended Motion to

16

Dismiss, Filed on November 29, 2021" and the August 2, 2022 "Final Judgment" are affirmed as to Counts II and III, and vacated as to Count I, of the Complaint.  The case is remanded for further proceedings consistent with this Opinion.


On the briefs:

Ted H.S. Hong                        /s/ Katherine G. Leonard
for Plaintiffs-Appellants            Presiding Judge


James E. Halvorson,                  /s/ Clyde J. Wadsworth
Amanda Furman, and                   Associate Judge
Robert Rawson,
Deputy Attorneys General,
for Defendant-Appellee               /s/ Sonja M.P. McCullen
                                     Associate Judge


Robert Brian Black and
Benjamin N. Creps
(Public First Law Center)
for Amicus Curiae Public
First Law Center